UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMORIM HOLDING FINANCEIRA, S.G.P.S., S.A.,<br><br>Plaintiff,<br><br>v.<br><br>C. P. BAKER & CO., LTD. and CHRISTOPHER P. BAKER,<br><br>Defendants. | Civil Action No. 09-10641-NG |

**ANSWER AND COUNTERCLAIMS OF C.P. BAKER & CO., LTD. AND CHRISTOPHER P. BAKER**

Defendants C.P. Baker & Co., Ltd. ("C.P. Baker") and Christopher P. Baker ("Baker") hereby answer the Complaint of Plaintiff Amorim Holding Financeira, S.G.P.S., S.A. (the "Plaintiff" or "Amorim") as follows.

## ANSWER

### PRELIMINARY STATEMENT

1. The "Preliminary Statement" is an argument based on facts alleged in paragraphs 10-60 of the Complaint. Insofar as an answer to this argument section is required, Defendants refer to their answers to the allegations in paragraphs 10-60.

2. Defendants incorporate their answer to paragraph 1 as if re-stated herein.

3. Defendants incorporate their answer to paragraph 1 as if re-stated herein.

4. Defendants incorporate their answer to paragraph 1 as if re-stated herein.

5. Defendants incorporate their answer to paragraph 1 as if re-stated herein.

6. Defendants incorporate their answer to paragraph 1 as if re-stated herein.

7. Defendants incorporate their answer to paragraph 1 as if re-stated herein.

8. Defendants incorporate their answer to paragraph 1 as if re-stated herein.

9. Defendants incorporate their answer to paragraph 1 as if re-stated herein.

## PARTIES

10. On information and belief, admitted.

11. Admitted, except that C.P. Baker's offices are now located at 10 High Street, Boston, Massachusetts.

12. Admitted.

## JURISDICTION AND VENUE

13. Admitted.

14. Admitted.

15. Defendants deny that the Plaintiff was formed in the mid-nineteenth century and are without sufficient knowledge to answer as to the date of origin of the Amorim family's cork business or the degree to which the efforts of Americo Ferreira de Amorim in particular are responsible for the company's growth. Defendants admit that Mr. Amorim sought investments outside Portugal.

16. On information and belief, Defendants deny that the Plaintiff, its corporate predecessor, its affiliates, or Mr. Amorim were unfamiliar with investments in the United States at the time they first met Baker. Baker is an experienced investor but denies the paraphrasal of his presentation to Mr. Amorim. Defendants deny that a lack of fluency in English on the part of persons associated with the Plaintiff impaired the Plaintiff's ability to make informed investment decisions, and deny the remaining allegations of paragraph 16.

17.   Defendants deny the allegations of paragraph 17 that allege or suggest that Plaintiff invested completely in reliance on the Defendants' direction or recommendations without itself investigating the merits of the investments. Defendants admit that Amorim's investment in the Portfolio Companies took several forms. Defendants refer to the private placement memorandum for the Anasazi Fund as to the management and directors of Anasazi. On information and belief, Defendants deny the last sentence of paragraph 17 and the remaining allegations of paragraph 17.

18.   The allegations of paragraph 18 are too vague to properly answer in that they characterize clusters of alleged events rather than describe particular events. Defendants deny the allegations concerning their inducement of the Plaintiff's reliance and that Baker made misrepresentations concerning his management functions. Defendants refer to offering memoranda and investment contracts in Plaintiff's possession that accurately state Baker's management roles. Defendants deny that C.P. Baker ever had 40-50 employees and that they showcased this staff as the group that would provide management of the Portfolio Companies. Defendants deny the remaining allegations of paragraph 18.

19.   Defendants deny the allegations of the first sentence of paragraph 19. Defendants admit that C.P. Baker's staff diminished some time after the Plaintiff made the investments alleged in the Complaint and deny the allegations of the third and fourth sentences of paragraph 19, which in part state conclusions of law. Defendants admit that by August 2007, an Amorim-related entity had invested in Anasazi and deny the remaining allegations of the fifth sentence of paragraph 19. Defendants admit that most investments were in illiquid securities and deny the remaining allegations of the sixth sentence of paragraph 19. Defendants deny the remaining allegations of paragraph 19.

20. Denied.

21. The allegations of paragraph 21 are too vague to properly answer in that they characterize clusters of alleged events rather than describe particular events. To the extent that an answer is required, the allegations are denied. Defendants did not take many of the management fees to which they were entitled, and such fees as they took were properly disclosed to investors.

22. Denied.

23. Denied. Brokerage fees were not charged on all investments and all charged fees were disclosed and proper. Potential conflicts of interest were disclosed to all investors, and Baker did not say nor did Plaintiff believe that Defendant Baker was, "looking out solely for Amorim's interest."

24. Defendants deny having made false and misleading statements and deny the allegations concerning particular representations of minimum or assured returns on investment in a given time period. Defendants admit the approximate amount of the Amorim-related investment in Chime. The remaining allegations of paragraph 24 are too vague to properly answer in that they characterize clusters of alleged events rather than describe particular events. To the extent that an answer is required, the allegations are denied.

25. Denied. Baker did not misrepresent his expectation concerning the possibility of new investors. An Amorim-related entity invested a second time in Chime after obtaining information and weighing the risks of the investment.

26. Defendants deny that it was Baker's decision whether to "allow" start-up companies to become active without, "ensuring that they had received sufficient investment capital to meet their needs." The remaining allegations in paragraph 26 are denied.

27.     Defendants deny the characterizations in the first two sentences of paragraph 27. Plaintiff knew of MySky because it was a holding of Anasazi in which Plaintiff or a related entity owned shares. Defendants deny that Plaintiff believed, "that Baker was pre-selecting only investments with assured profits and without excessive risks." Defendants deny the incomplete characterization of MySky's business plan, which speaks for itself. Defendants deny the remaining characterizations and allegations of paragraph 27, except for the allegation that MySky has not performed financially so as to generate a positive return for the Plaintiff.

28.     Defendants deny that they "directed" Plaintiff to invest in AEHC, but admit that an Amorim-related entity became an investor. The second sentence of paragraph 28 is admitted. Defendants deny the characterizations of the third and fourth sentences of paragraph 28, and direct Plaintiff to contracts and evidence already in its possession relating to Michael Douglas's involvement in AEHC. Defendants admit that an Amorim-related entity was invited to participate in raising a film fund but deny the insinuation that it was to be raised without Amorim's involvement, and deny having made the "assurances" alleged. Defendants admit the approximate amount of the Amorim-related involvement in AEHC but deny that the investment was made solely in reliance upon Defendants' representations. Defendants deny the remaining allegations of paragraph 28.

29.     Defendants admit that C.P. Baker discussed the concept of an IPO with Amorim as a possible exit strategy but deny the remaining allegations of paragraph 29.

30.     Defendants admit that an Amorim-related entity invested in On-Card but deny that Baker "directed" or "assured" Plaintiff as alleged. Defendants deny having misrepresented any material facts regarding On-Card or that Plaintiff invested solely on the basis of Defendants' recommendation without its own independent analysis of facts and opinions relating to On-Card.

31.     Denied, except for the allegation that as of the filing of Plaintiff's Complaint, the investment in On-Card had diminished in value.

32.     Defendants admit introducing Z-Force to Amorim-related personnel as an investment opportunity and admit the approximate amount of the investment. Defendants deny the allegations of the second and third sentences of paragraph 32. Defendants deny that between May and June 2006 the Plaintiff knew nothing of events at Z-Force. Defendants deny that, as of the date of its Complaint, the Plaintiff has lost all of its investment. Defendants deny the remaining allegations of paragraph 32.

33.     Defendants admit that an Amorim-related entity invested approximately $2 million in One IP Voice but deny that Baker made the alleged assurances regarding the company's prospects. Defendants admit, on information and belief, that One IP Voice filed for bankruptcy. Defendants deny the remaining allegations of paragraph 33.

34.     Defendants deny they made "false assurances" regarding Chime, MySky, AEHC, On-Card, Z-Force, One IP Voice, or Anasazi. Defendants deny that Plaintiff relied solely on Defendants' representations as to any of these investments. Defendants deny the allegations concerning "not uncommon" transaction practices as vague and unspecific.

35.     Defendants are without sufficient knowledge to answer as to the Plaintiff's state of mind as alleged in the first two sentences of paragraph 35. Defendants admit that by late 2007, the Plaintiff sought to recover investment losses by renewing its pursuit of an interest in Remote MDx. Defendants deny the allegations of a "concocted…scheme," and deny the remaining allegations of paragraph 35.

36. Defendants deny that the Remote MDx investment involved any "scheme" and that Baker, "represented that this was a risk-free investment with a virtually guaranteed return." Defendants deny the remaining allegations of the last sentence of paragraph 36 as alleged.

37. Denied, except for the allegation that Vatas did not perform on the "put" contract, as to which Defendants are without sufficient information to admit or deny.

38. Paragraph 38 purports to state conclusions of law regarding duties and conflicts of interest that require no response, but which are denied. Defendants deny the remaining allegations of paragraph 38.

39. Defendants are without sufficient information to admit or deny the allegations of paragraph 39.

## COUNT I: VIOLATION OF M.G.L. Ch. 110A § 410

40. No response to this paragraph is required.

41. The allegations of paragraph 41 state a legal conclusion to which no response is required. To the extent that a response is required, the allegations are denied.

42. The allegations of paragraph 42 state a legal conclusion to which no response is required. To the extent that a response is required, the allegations are denied.

43. Denied.

44. Denied.

45. Denied

46. Denied.

47. Denied.

## COUNT II: FRAUD

48. No response to this paragraph is required.

49. Denied.

50. Denied.

## COUNT III:  NEGLIGENT MISREPRESENTATIONS

51. No response to this paragraph is required.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

## COUNT IV:  BREACH OF FIDUCIARY DUTY

56. No response to this paragraph is required.

57. Denied.

58. The allegations of paragraph 58 state a legal conclusion to which no response is required. To the extent that a response is required, the allegations are denied.

59. Denied.

60. Denied.

## COUNT V:  VIOLATION OF M.G.L. Ch. 93A

61. No response to this paragraph is required.

62. Admitted.

63. The allegations of paragraph 63 state a legal conclusion to which no response is required. To the extent that a response is required, the allegations are denied.

64. Defendants admit that C.P. Baker conducts its business primarily from its Boston office and deny the remaining allegations of paragraph 64.

65. Denied.

66. The allegations of paragraph 66 state a legal conclusion to which no response is required. To the extent that a response is required, the allegations are denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred and waived by the investment contracts for the investments alleged in the Complaint.

### SECOND AFFIRMATIVE DEFENSE

The Plaintiff is estopped by its own misrepresentations and breaches of warranty.

### THIRD AFFIRMATIVE DEFENSE

The Plaintiff fails to state a claim on which relief can be granted.

### FOURTH AFFIRMATIVE DEFENSE

The Plaintiff is not the real party in interest as to any investment other than My Sky and, on information and belief, Remote MDx.

### FIFTH AFFIRMATIVE DEFENSE

The Plaintiff's losses are a result of its investment decisions and risks that it knowingly or negligently assumed.

### SIXTH AFFIRMATIVE DEFENSE

The Plaintiff's losses were caused by persons other than the Defendants for whom the Defendants are not responsible.

### SEVENTH AFFIRMATIVE DEFENSE

The Plaintiff's allegations are substantially untrue and advanced in bad faith.

## EIGHTH AFFIRMATIVE DEFENSE

Defendants reserve the right to rely on such other defenses as arise or become apparent during the course of litigation.

## COUNTERCLAIMS

### PARTIES

1. C.P. Baker & Co., Ltd. ("C.P. Baker") is a Massachusetts corporation with a principal place of business in Boston, Massachusetts.

2. Christopher B. Baker ("Baker") is a resident of Massachusetts.

3. Amorim Holding Financeira, S.G.P.S., S.A. ("Amorim") is, on information and belief, a corporation organized under the laws of Portugal, with a principal place of business in Mozelos, Portugal.

### JURISDICTION AND VENUE

4. Jurisdiction and venue are proper in this Court on the grounds set forth in the Plaintiff's Complaint.

### FACTS COMMON TO ALL COUNTS

5. Morris Holdings Limited ("Morris Holdings") invested in Anasazi Partners III Offshore Fund, Ltd. ("Anasazi") in approximately April 2004.

6. Morris Holdings invested in On-Card, Inc. ("On-Card"), in approximately October 2006.

7. AEHC-B Holdings, Inc. ("AEHC-B") invested in American Entertainment Holding Company, LLC ("AEHC") in June 2005.

8. ZFP-B Holdings, Inc. ("ZPB-B") invested in Z-Force Enterprises, LLC ("Z-Force") in approximately December 2004.

9. Chime-B Holdings, Inc. ("Chime-B") invested in Chime Entertainment, LLC ("Chime") in approximately August 2005.

10. In approximately December 2005, Amorim invested in MySky Communications, Inc. ("MySky").

11. Sotomar Empreedimentos Industriais e Imobiliarios, S.A. ("Sotomar") invested in One IP Voice, Inc. ("One IP") in approximately February 2006.

12. Amorim alleges to have invested in Remote MDx Inc. ("Remote MDx") in approximately November 2007.

13. Amorim alleges that Morris Holdings, AEHCB, ZFP-B, Chime-B and Sotomar are its affiliates such that Amorim is the real party in interest as to all claims against C.P. Baker and Baker.

14. In the Application Form for Non-U.S. Persons ("Anasazi Application"), Morris Holdings represented and warranted, in Section 3.4, as follows:

> Ability to Invest. Investor represents and warrants that: (a) Investor has the knowledge, expertise and experience in financial matters to evaluate the risks of investing in the Fund and to make an informed decision with respect thereto; (b) Investor is aware of the risks inherent in investing in the Shares and the method by which the assets of the Fund are held and/or traded; and (c) Investor can bear the risk of loss of Investor's entire investment.

15. The Anasazi Application also states, at Section 7.1, as follows:

> Indemnification. Investor acknowledges that Investor will indemnify and hold harmless the Fund, the Manager, the Administrator and their respective directors, officers and employees against any loss, liability, cost or expense (including without limitation attorneys' fees, taxes and penalties) which may result directly or indirectly, from any misrepresentation or breach of any warranty, condition, covenant or agreement set forth herein or in any other document delivered by the Investor to the Fund.

16. Baker is a director of Anasazi and the fund's portfolio manager.

17. In its Subscription Agreement for On-Card ("On-Card Subscription Agreement"), Morris Holdings represented and warranted, among other things, at Section 3(c), as follows:

> Risks. Subscriber recognizes that the purchase of the Notes involves a high degree of risk, and is suitable only for persons of adequate financial means who have no need for liquidity in this investment in that (i) Subscriber may not be able to liquidate the investment in the event of an emergency; (ii) transferability is extremely limited; and (iii) in the event of a disposition, Subscriber could sustain a complete loss of the entire investment.

18. The On-Card Subscription Agreement also states, at Section 3(e), as follows:

> Subscriber's Financial Experience. Subscriber is sufficiently experienced in financial and business matters to be capable of evaluating the merits and risks of an investment in the Company.

and at Section 3(f), as follows:

> Suitability of Investment. Subscriber has evaluated the merits and risks of Subscriber's proposed investment in the Company, including those risks particular to Subscriber's situation, and has determined that this investment is suitable for Subscriber. Subscriber has adequate financial resources for an investment of this character, and at this time Subscriber can bear a complete loss of Subscriber's investment. Further, Subscriber will continue to have, after making an investment in the Company, adequate means of providing for its current needs, the needs of those dependent on it, and possible personal contingencies.

19. The On-Card Subscription Agreement also states, at Section 6(b), as follows:

> The Subscriber agrees to indemnify, defend and hold harmless the Company and its affiliates, directors, officers, trustees, managers, employees and representatives (any of the foregoing, a "Company Indemnified Party"), from and against any Losses suffered, sustained, incurred or required to be paid by any such Company Indemnified Party due to, based upon or arising out of any material inaccuracy in, or any material breach of, a representation or warranty of the Subscriber contained in this Agreement.

20. At Section 4(c) of the Subscription Agreement for AEHC ("AEHC Subscription Agreement"), AEHC-B represented and warranted, among other things, its understanding that:

   (i) There are substantial risks incident to investment in the Company, including loss of the entire amount of such investment;

   (ii) Portions of the capital contributions will be used to pay certain liabilities, fees and expenses of the Company as set forth in the Private Placement Memorandum or Operating Agreement; and

   (iii) No oral or written representations have been relied upon by Investor other than as stated in this Agreement, in any of the deliverables in connection with this Agreement, or in the Operating Agreement in connection with the offering or purchase of the Purchased Units.

and at Section 4(d), that:

   (v) Investor has such knowledge and experience in financial, tax, and business matters so as to enable the undersigned to evaluate the merits and risks of an investment in the Purchased Units, to protect the Investor's own interests in connection with the investment, and to make an informed investment decision with respect thereto and the investor has relied on its own examination of an investment in the Purchased Units.

and that:

   (vii) The representations, warranties, and agreement of the Investor contained herein and in any other deliverables in connection with the Purchased Units are made with the intent that they be relied on by the Company and the Managers in determining the Investor's suitability as a purchaser of the Purchased Units, shall be true and correct in all respects on and as of the date of the acceptance of the subscription, as if made on and as of such date, and shall survive the execution and delivery of this Subscription Agreement and the purchase of the Purchased Units.

  21. Section 10(b) of the AEHC Subscription Agreement states as follows:

   (b) <u>Indemnification by Investor</u>.  Investor agrees to indemnify and hold harmless the Company and its Managers against any and all Damages incurred in connection with or arising out of or resulting from (i) any inaccuracy or breach of any representation or warranty made by Investor in or pursuant to this Agreement or (ii) any material breach, non-compliance or non-fulfillment by Investor of any covenant, agreement or undertaking to be complied with or performed by its contained in or pursuant to this Agreement.

  22. Baker is a member of AEHC's management in a position analogous to chief executive officer.

23.  In paragraph 5 of the Subscription Agreement for Z-Force ("Z-Force Subscription Agreement"), ZFP-B represented, among other things:

> The Investor understands, agrees and acknowledges that investment in the Common Interests involves an extremely high degree of risk and is suitable only for sophisticated investors.

and that:

> The Investor understands, agrees and acknowledges that the Company has disclosed in writing that the transferability of the Common interests is severely limited and that the Investor must continue to bear the economic risk of this investment for an indefinite period as the Common Interests have not been registered under the 1933 Act or any other state securities laws and therefore cannot be offered or sold unless they are subsequently registered under the 1933 Act or an exemption from such registration is available.

24.  Baker is a manager of Z-Force.

25.  In Section 2.2(h) of the Chime Interest Purchase Agreement ("Chime Purchase Agreement"), Chime-B represented and warranted, among other things, that:

> The Investor is a sophisticated investor, experienced in investing in securities of companies in the development stage and acknowledges that it is able to fend for itself, can bear the economic risk of its investment, and has such knowledge and experience in financial or business matters in general and in particular with respect to this type of investment as to be capable of evaluating the merits and risks of an investment in the Purchased Interest. The Investor understands that an investment in the Company is highly speculative and involves numerous risks and uncertainties. The Investor represents that it has had an opportunity to ask questions and receive answers from the Company regarding the terms and conditions of the offering of the Purchased Interest and that it has reviewed <u>Exhibit C</u> hereto setting forth certain Risk Factors with respect to the Company. The Investor has evaluated and understands the risks and terms of investing in the Company. The Investor has had the opportunity to discuss with his, her or its professional legal, tax and financial advisors the suitability of an investment in the Purchased Interest for the Investor's particular tax and financial situation. The Investor understands that it, and not the Company, shall be responsible for its own tax liability that may arise as a result of the transactions contemplated by this Agreement.

26.  Section 3.1(a) of the Chime Purchase Agreement states as follows:

> ...

14

>Except as otherwise provided under applicable law, the Investor shall indemnify and hold harmless the Company and the Managers from and against all losses or liabilities (including, without limitation, reasonable attorneys' fees) asserted by, or on behalf of, the Investor or any beneficiary thereof against the Managers, its members, or partners, or any of their respective controlling persons, shareholders, members, principals, directors, officers, employees and other agents, in connection with this Agreement, for any act taken or omitted in good faith in discharging its obligations hereunder to the extent that such act or omission does not involve gross negligence, willful default, fraud, dishonesty, reckless disregard of a material obligation or duty, or violation of applicable law.

27. Baker is a manager of Chime.

28. As to their involvement with investments in MySky, Remote MDx and One IP, Americo Ferreira de Amorim and his staff, family, and associates represented themselves as financially sophisticated and able to bear the risk of losing their entire investments.

## COUNT I
## MISREPRESENTATION

29. The foregoing allegations are incorporated as if restated herein.

30. Amorim's Complaint alleges facts which, if true, constitute knowing or negligent material misrepresentations of fact regarding, among other things, Amorim's (or its affiliates') financial sophistication and ability and willingness to bear the risk of loss of its investments.

31. C.P. Baker and Baker relied on such material misrepresentations.

32. C.P. Baker and Baker have suffered harm and damages as a result.

## COUNT II
## BREACH OF WARRANTY

33. The foregoing allegations are incorporated as if restated herein.

34. Amorim's Complaint alleges facts which, if true, constitute breaches of warranties contained in the investment contracts for Anasazi, On-Card, AEHC, Z-Force and Chime, including warranties respecting financial sophistication and willingness to bear the risk of loss.

35. C.P. Baker and Baker relied on such warranties in their dealings with Amorim.

36. Amorim's breaches have caused C.P. Baker and Baker harm and damages.

## COUNT III
## INDEMNIFICATION

37. The foregoing allegations are incorporated as if restated herein.

38. Insofar as it is an affiliate, for investment purposes, of Morris Holdings, AEHC-B, ZFP-B and Chime-B, Amorim, by and through its principals, employees and associates, is contractually and at common law required to indemnify C.P. Baker and Baker for losses that they have suffered as a result of Amorim's misrepresentations.

Respectfully submitted,

C.P. BAKER & CO., LTD. and
CHRISTOPHER P. BAKER

By their attorneys,

/s/ Daniel J. Dwyer
Daniel J. Dwyer (BBO #567026)
Michael T. Marcucci (BBO #652186)
HANIFY & KING, P.C.
One Beacon Street
Boston, MA 02108
(617) 423-0400
(617) 423-0498 Fax
djd@hanify.com
mtm@hanify.com

Dated: February 11, 2010
*553141*

## CERTIFICATE OF SERVICE

I certify that the foregoing *Answer and Counterclaims of Defendants C.P. Baker & Co., Ltd. and Christopher P. Baker* was served by causing a true and correct copy thereof to be delivered by electronic mail and first-class mail to:

Anthony S. Fiotto, Esq.
Goodwin Procter LLP
53 State Street
Boston, MA  02109
   *(Counsel to Plaintiff)*

/s/ *Daniel J. Dwyer*
Daniel J. Dwyer

Dated:  February 11, 2010
553141