UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMORIM HOLDING FINANCEIRA S.G.P.S.,S.A., | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 09-10641-DPW |
| C.P. BAKER & CO., LTD, and CHRISTOPHER P. BAKER, | ) ) ) ) |
| Defendants. | ) ) ) |

ORDER ON PENDING DISCOVERY MOTIONS

November 22, 2011

SOROKIN, M.J.

On March 3, 2011, the Court, in response to a joint request of the parties, extended the fact discovery period to March 31, 2011. On March 31, 2011, the parties filed a joint motion requesting one "final" enlargement in the period for fact discovery, requesting an end date of May 31, 2011. (Docket #60). In the motion, the parties described the discovery that remained (some depositions and some document issues) and reported (as they had in the prior motion) that they were conferring regarding some discovery disputes in an effort to avoid motion practice. The Court allowed the motion on April 4, 2011, and, subsequently, scheduled a status conference for June 8, 2011. At the conference, the Court heard from counsel regarding the status of the case as well as argument on a motion to quash that had been filed on June 3, 2011. No change was made to the deadlines for expert discovery (disclosures on June 30, 2011, rebuttal disclosures on July 29, 2011, and close of expert discovery on August 31, 2011) or summary judgment (motions due on October 3, 2011).

On September 28, 2011, the parties filed a joint motion (Docket #68) to extend the summary judgment schedule until the Court ruled upon the Second Motion to Compel (Docket #69) Defendants had filed on that day. The Court allowed that motion to permit an orderly disposition of the motion to compel. Since the Court's ruling on September 30, 2011, Defendants have filed two more motions: a Motion to Preserve Evidence (Docket #76) on October 7, 2011, and a Third Motion to Compel (Docket #82) on October 14, 2011. Plaintiff filed a Cross-Motion for a Protective Order (Docket #89) with its response to Defendants' Motion to Compel.

<u>The Second Motion to Compel</u>

Defendants' Second Motion to Compel (Docket #69) is DENIED IN PART AND GRANTED IN PART.

First, Defendants fail to comply with Local Rule 37.1(b)(4), which requires the moving party to set forth in the memorandum accompanying its motion to compel each interrogatory or request for production raising an issue to be decided by the court, and the response thereto. This is not merely a technical issue, the Court requires the interrogatories and/or requests, the answers thereto, and, when appropriate, the evolution of the responses, in the memorandum as set forth in the Local Rule, in order to accurately frame the issues. Although this suffices, I nonetheless address each request separately.

Defendants made their initial request for documents supporting Plaintiff's alleged damages in October 2009, which Plaintiff responded to on November 18, 2009. In their March 2010 Motion to Compel, filed after the parties' discovery conference, Defendants did not move on their request or otherwise seek Plaintiff's financial statements. Instead, Defendants waited until July 30, 2011, to request the Plaintiff's internal financial statements. This is clearly untimely.

Defendants request "All documents concerning Remote MDx, Inc. ("Remote MDx"), including without limitation all documents concerning [Plaintiff's] diligence, investigation or analysis respecting any investment in Remote MDx." Defendants also request all documents concerning Vatas Holding GMBH and Lars Windhorst. As to all Remote MDx documents raised in the July 30, 2011, letter, these requests are untimely. The Court previously denied Defendants' Motion to Compel with respect to documents concerning Remote MDx and Vatas because Plaintiff had represented to the Court that it was providing documents responsive to that request. On July 30, 2011, over a year later, Defendants sought for the first time Plaintiff's purchase contract with Nord LB, the entity from which Plaintiff purchased its Remote MDx stock, and documents regarding Plaintiff's pre-2008 efforts to provide credit to Remote MDx. These requests are clearly untimely. Regarding these documents and the post Vatas default activities, while arguably relevant, the Court finds that the burden of the proposed discovery will outweigh its likely benefit considering the importance of this discovery in resolving the issues, and, therefore, denies this request on its merits. See Fed. R. Civ. P. 26(b)(2)(C)(iii).

Defendants seek all offering and subscription documents for shares in Anasazi and the Portfolio Companies. Plaintiff represents to this Court that it has already produced what it has been able to locate in its files after a reasonable search, and, therefore, the Court denies this request on its merits.

Defendants request all documents concerning Amorim Alternative Investments. Plaintiff has already produced all minutes since 2005 of any meetings in which any investment recommended by Defendants was mentioned or the question of whether to make any other investments was discussed. The Court finds that this constitutes sufficient discovery in light of the posture of and

3

issues in this case, as the burden of the proposed discovery will outweigh its likely benefit, and, therefore, the Court denies this request on its merits. See Fed. R. Civ. P. 26(b)(2)(C)(iii).

Defendants have requested all documents concerning Amorim Global Investors ("AGI"). AGI was launched in February 2008, after the relevant events leading to this case occurred. Thus, these documents have little relevance. Therefore, the Court denies this request on the merits as the burden of the proposed discovery will outweigh its likely benefit. See Fed. R. Civ. P. 26(b)(2)(C)(iii).

Defendants served five interrogatories on Plaintiff in April 2011. Each seeks the factual basis for a given statement contained in literature promulgated by AGI regarding the Amorim Group's achievements as an investor. As stated above, AGI was not launched until February 2008, after the relevant events leading to this case. Thus, in light of the relative lack of relevance, the Court denies this request on the merits as the burden of the proposed discovery will outweigh its likely benefit. See Fed. R. Civ. P. 26(b)(2)(C)(iii).

Defendants seek all documents in Plaintiff's possession or its lawyers, reflecting whatever combination of commission payment, threat, or fee-for-services was discussed between Plaintiff and Robert Beuret. This discovery arises out of meeting minutes produced in May 2011 reflecting discussions of this possibility by employees of Plaintiff. Plaintiff states that, after conducting a reasonable and diligent search, it has provided all responsive documents concerning Beuret. The Court finds that these documents would be powerful tools for impeachment purposes. Therefore, Plaintiffs are hereby ordered to produce to Defendants any documents sent to Beuret, or his agent or lawyer, working on his behalf, referring or discussing a success fee, a commission, or an agreement not to sue Beuret.

4

Accordingly, the Second Motion to Compel (Docket #69) is DENIED IN PART AND GRANTED IN PART.

The Third Motion to Compel

Defendants seek three documents withheld from disclosure on the ground of privilege. Defendants first received the privilege log identifying these three documents on September 6, 2011. Nonetheless, the Motion is without merit. Two of the three documents that Defendants seek have already been produced. This result was known (as to one) and foreseen (as to the other document) when Defendants filed the motion. In its moving papers, Defendants state that "Goodwin Proctor agreed to produce the communication with Beuret [which is one of the three documents sought in the motion]." By way of explanation, Defendants state that they filed when they did to avoid the delay criticism they faced on the Second Motion to Compel. This is insufficient. The Motion was unnecessary as to these two documents.

Regarding the other document sought – an email from a Goodwin attorney to his client describing the legal services Goodwin would provide on a particular engagement along with the fee arrangement, the document is privileged. Defendants contend otherwise only by asserting that fee arrangements are not privileged. That contention is irrelevant. Defendants admittedly want the description of the legal services not the fee arrangement and plainly that description is privileged. In re Horn, 976 F.2d 1314, 1317-18 (9th Cir. 1992).

Accordingly, the Third Motion to Compel (Docket #82) is DENIED.

The Motion to Preserve Evidence and Cross-Motion for a Protective Order

Exhibit 19 to Defendants' Second Motion to Compel consists of seven sets of meeting minutes produced by Plaintiff. Following the submission of the Second Motion to Compel, Plaintiff

claimed that these documents are subject to attorney-client privilege and were inadvertently produced. Defendants then filed the instant Motion to Preserve seeking an order permitting them to retain the documents. (Docket #76). In its opposition papers, Plaintiff filed a Cross-Motion for a Protective Order, seeking the return of the documents and any copies thereof. (Docket #89).

On March 4, 2010, a confidentiality order, jointly agreed to by the parties, was entered by the Court. The order states, in relevant part:

> Inadvertent disclosure of any privileged or work product information in connection with the litigation shall not be deemed a waiver of the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Upon the request from a person which has inadvertently produced any document or information which it believes to be subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, the Party receiving the information or document shall immediately return it to the producing person.

(Docket #27 at ¶ 17).

The parties have chosen to have the issue of inadvertent disclosure governed by the confidentiality order rather than the common law. Thus, Defendants shall be required to return the documents at issue if Plaintiff has a good faith belief that they are subject to the attorney-client privilege and if they were inadvertently produced.

The documents at issue summarize discussions among Plaintiff's senior management and Plaintiff's in-house counsel. Defendants argue that the presence of third parties at these meetings destroys the privilege.

With respect to the September 2009 and October 2009 meeting minutes, Defendants object to assertion of the privilege based on the presence of Hugo Domingos. However, contrary to Defendants' contention, Plaintiff represents that Domingos was Plaintiff's employee during the relevant time period. Thus, Domingos's presence at these meetings does not destroy the privilege.

6

Defendants object to assertion of the privilege with respect to the August 2008, November 2008, September 2009, and July 2010 meeting minutes on the basis of the presence of Francisco Rego and/or Justiano Gomes. Gomes is an employee of Amorim Holding II and Rego is a board member of Amorim Holding II. Because Plaintiff and Amorim Holding II are related through common ownership and control, communications between Plaintiff's in-house counsel and the Amorim II employees are treated in the same way as communications between Plaintiff's in-house counsel and Plaintiff's employees. See Music Sales Corp. v. Morris, No. 98CIV.9002(SAS)(FM), 1999 WL 974025, at *7 (S.D.N.Y. Oct. 26, 1999). Therefore, the presence of Gomes or Rego at the meetings does not destroy the privilege. Upjohn Co. v. United States, 449 U.S. 383, 390-97 (1981).

Defendants also object to assertion of the privilege with regards to the August 2008 and November 2008 meeting minutes based on the presence of non-party witness Robert Beuret, a former employee of Defendant C.P. Baker & Co., LTD. While the attorney-client privilege extends to communications between employees of the client to attorneys seeking to render legal advice to the client corporation, the same is not true for non-employees of the client. Id. Beuret's presence at the August 2008 and November 2008 meetings destroys the privilege. Nor could Plaintiff have a good faith belief that privilege attached to communications at a meeting attended by a former employee of a defendant. Therefore, Defendants are entitled to keep the minutes reflecting those meetings.

Regarding the privileged meeting minutes, the Court must determine the correct legal standard for evaluating the term "inadvertent disclosure," because it is not defined in the confidentiality order. On May 31, 2000, Magistrate Judge Neiman issued an opinion in VLT Corp. v. Unitrode Corp, 194 F.R.D. 8, 12 (D. Mass. 2000), determining that the inclusion of the term

7

"inadvertent disclosure" in a protective order without further definition precluded protection for documents produced as a result of gross negligence. In 2003, Judge Saris adopted this approach in <u>VLT, Inc. v. Lucent Technologies, Inc.</u>, No. Civ.A. 00-11049-PBS, 2003 WL 151399, at *2 (D. Mass. Jan. 21, 2003). Finding that the <u>Unitrode</u> decision had "put [the parties] on notice that future disclosures deemed 'grossly negligent' would be deemed outside the protective order's ambit[,]" Judge Saris specifically stated that the parties could have bargained for greater protection by specifying precisely the kinds of conduct covered by the stipulated protective order. <u>Id.</u> Here, the parties chose not to specify the kinds of conduct covered by the confidentiality order, therefore, the Court finds that the documents are only protected insofar as their production was not the result of gross negligence.

Plaintiff asserts that the documents at issue were personally reviewed by an attorney at Plaintiff's law firm. The screening protocol included having the documents interpreted by a translation program. Plaintiff asserts that errors in the translations concealed the proper context of the communications in the meetings and led Plaintiff to misunderstand the privileged nature of the discussions. Based on the record now before it, the Court lacks sufficient information to determine whether the production of the documents at issue was or, was not, the result of gross negligence. Specifically, the Declaration of Damian W. Wilmot, submitted in support of Plaintiff's Cross-Motion, fails to adequately illustrate the screening process used and how the incorrect translations concealed the privileged nature of the documents at issue. Plaintiff is hereby granted until December 1, 2011, to file a brief concerning this issue of no more than five pages as well as supporting factual material. Defendants are hereby granted until December 6, 2011, to file a response of no more than five pages.

Accordingly, Defendants' Motion to Preserve (Docket #76) is ALLOWED with respect to the August 2008 and November 2008 meeting minutes and the Cross-Motion for Protective Order (Docket #89) is DENIED with respect to the August 2008 and November 2008 meeting minutes. The Court shall reserve ruling on the Motions with respect to the other meeting minutes until the parties have filed their additional submissions.

Scheduling Order

The summary judgment schedule adopted by the Court when it allowed Docket #68 now commences. Absent further leave of the Court, the memoranda in support of or opposition to motions for summary judgment are limited to twenty-five pages with a seven page limit for replies or surreplies.

Under 28 U.S.C. § 636 and Federal Rule of Civil Procedure 73, the parties may, if all parties so agree, consent to the exercise of jurisdiction by the magistrate-judge. In light of the fact that the original district judge has retired, the parties are reminded of this right. If all parties consent, then counsel shall complete the necessary paperwork available from the Clerk's Office, otherwise counsel need not report to the Court regarding this matter and no report shall be made regarding the position of any one party. Either and/or both parties to this lawsuit are free to withhold consent without adverse substantive consequences.

SO ORDERED.

    /s / Leo T. Sorokin
Leo T. Sorokin
UNITED STATES MAGISTRATE JUDGE